PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RONALD YANDELL, et al., <br><br> Defendants. | Case No. 2:19-cr-107-KJM <br><br> PLEA AGREEMENT FOR DEFENDANT DONALD MAZZA |

## I.   INTRODUCTION

### A.   Scope of Agreement

The defendant Donald Mazza ("defendant") will enter guilty pleas to Counts One and Five of the Indictment. Count One of the Indictment case charges the defendant with a violation of 18 U.S.C. § 1962(d) – Conspiracy to Participate in a Racketeering Enterprise. Count Five of the Indictment charges the defendant with a violation of 18 U.S.C. § 1959(a)(5) – Conspiracy to Commit Murder in Aid of Racketeering. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory

authorities.

### B. Court Not a Party

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities that may not have been charged in the Indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that the prosecutor, defense counsel, and the Court cannot make a binding prediction or promise regarding the sentence he will receive.

## II.    DEFENDANT'S OBLIGATIONS

### A. Guilty Pleas

The defendant will enter guilty pleas to Counts One and Five of the Indictment. Count One of the Indictment case charges the defendant with a violation of 18 U.S.C. § 1962(d) – Conspiracy to Participate in a Racketeering Enterprise. Count Five of the Indictment charges the defendant with a violation of 18 U.S.C. § 1959(a)(5) – Conspiracy to Commit Murder in Aid of Racketeering. The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis For Plea attached as Exhibit A are true and correct. Exhibit A is incorporated here by reference.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Rule 11(f) of the Federal

PLEA AGREEMENT                                    2

Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

**B.  Fine**

The parties agree that the defendant does not have the ability to pay a fine and is not likely to become able to pay a fine. Therefore, imposition of a fine should be waived. U.S.S.G. § 5E1.2(a).

**C.  Special Assessment**

The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

**D.  Defendant's Violation of Plea Agreement or Withdrawal of Plea**

If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. One way a defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete. Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement. The determination whether the defendant has violated the plea agreement shall be decided under a probable cause standard.

If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the right: (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

///

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision to exercise the options stated in the previous paragraph. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition, the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### III.   THE GOVERNMENT'S OBLIGATIONS

#### A.   Recommendations

##### 1.   Incarceration Range

The government will recommend that the defendant be sentenced to the low end of the applicable Guidelines range for his offenses, as determined by the Court.

##### 2.   Acceptance of Responsibility

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**B. Use of Information for Sentencing**

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

### IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty.

Count One - Conspiracy to Participate in a Racketeering Enterprise – 18 U.S.C. § 1962(d):

(1) The charged enterprise, the Aryan Brotherhood, was or would be established;

(2) The charged enterprise, the Aryan Brotherhood, was or would be engaged in, or its activities affected or would affect, interstate or foreign commerce;

(3) Between no later than in or around October 2011, and continuing to in or around June 2019, the defendant agreed that he or another conspirator would be associated with the charged enterprise, the Aryan Brotherhood;

(4) The defendant agreed that he or another conspirator would participate, either directly or indirectly, in the conduct of the Aryan Brotherhood's affairs though a pattern of racketeering activity; and

(5) The defendant agreed that he or another conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Aryan Brotherhood.

An "enterprise" is a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. This group of people, in addition to having a common purpose, must have some sort of framework, formal or informal, for carrying out the enterprise's objectives.

The government is not required to prove that the parties to or members of the alleged agreement or conspiracy were successful in achieving any or all of the objects of the agreement or conspiracy.

"Racketeering activity" refers to certain felonies under state or federal law, including any crimes involving murder, robbery, or drug trafficking.

Count Five – Conspiracy to Commit Murder in Aid of Racketeering – 18 U.S.C. § 1959(a)(5):

(1) First, between August 29, 2016, and October 9, 2016, the charged enterprise, the Aryan Brotherhood, existed and affected interstate commerce;

(2) Second, the charged enterprise, the Aryan Brotherhood, engaged in a pattern of racketeering activity;

(3) Third, the defendant knowingly and intentionally conspired to commit the murder of Aryan Brotherhood member Michael Trippe, in violation of California Penal Code §§ 182, 187, 188, and 189 – "murder" is the unlawful killing of a human being with malice aforehthought; and

(4) Fourth, the defendant's purpose in conspiring to commit the murder was to gain entrance to, or to maintain, or to increase his position in the enterprise.

The defendant fully understands the nature and elements of the crimes charged in Counts One and Five of the Indictment to which he is pleading guilty, together with the possible defenses to those charges, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

### A. Maximum Penalty on Count One

The maximum sentence that the Court can impose on Count One is ~~up to 20 years~~ life in prison, a fine of up to $250,000, a period of supervised release of up to 3 years, and a special assessment of $100.

### B. Maximum Penalty on Count Five

The maximum sentence that the Court can impose on Count Five is up to 10 years in prison, a fine of up to $250,000, a period of supervised release of up to 5 years, and a special assessment of $100.

### C. Violations of Supervised Release

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 3 additional years in prison per revocation.

## VI. SENTENCING DETERMINATION

### A. Statutory Authority

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B. Sentencing Arguments

The parties agree that the defendant may argue in support a departure from the Sentencing Guidelines under the sentencing factors under 18 U.S.C. § 3553 to arrive at a different sentence than that called for under the Sentencing Guidelines' advisory guideline range as determined by the Court. The government may respond and oppose any departure from the Sentencing Guidelines range. Under no circumstance will the defendant request a sentence of less than 5 years in prison.

## VII. WAIVERS

### A. Waiver of Constitutional Rights

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against his; and (f) not to be compelled to incriminate himself.

### B. Waiver of Appeal and Collateral Attack

The defendant understands that the law gives his a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his pleas, however, to give up the right to appeal any aspect of

the guilty pleas, conviction, or sentence imposed in this case.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence imposed in this case.

If the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in paragraph II.D (Defendant's Violation of Plea Agreement) of this Plea Agreement.

### C.   Waiver of Attorneys' Fees and Costs

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

### VIII.   ENTIRE PLEA AGREEMENT

Other than this plea agreement and any supplement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 06/08/22

TASHA CHALFANT, Esq.
Counsel for Defendant

### B. Defendant

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: JUNE 8, 2022

DONALD MAZZA
Defendant

### C. Attorney for United States

I accept and agree to this plea agreement on behalf of the government.

Dated: June 15, 2022

PHILLIP A. TALBERT
United States Attorney

JASON HITT    Justin Lee for
Assistant United States Attorney

PLEA AGREEMENT                                9

# EXHIBIT "A"
# Factual Basis for Plea

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

**Summary of Count One – Conspiracy to Participate in a Racketeering Enterprise**

Defendant Donald Mazza admits that, as part of the criminal agreement charged in Count One of the Indictment, between at least 2016 and continuing through 2020, he agreed with co-conspirators Ronald Yandell, Billy Sylvester, Danny Troxell, Matt Hall, and others to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(c). Mazza joined the agreement knowing of its purpose and intending to help accomplish that purpose.

As part of this criminal agreement, Mazza admits that (1) he knowingly became a member of the Aryan Brotherhood; (2) the Aryan Brotherhood was a criminal enterprise regularly engaging in a pattern of racketeering activity including murder, robbery, conspiracy to commit murder, and drug trafficking; (3) he knowingly agreed to participate in the conduct of the affairs of the Aryan Brotherhood by facilitating criminal activities on behalf of the AB, including by providing money to support incarcerated Aryan Brotherhood members and associates, and engaging in the conspiracy discussed below; (4) these criminal activities affected interstate commerce in that they took place in a number of different states, involved drug trafficking, and use of communications over cell phones and other activities; and (5) he was aware of the essential nature and scope of the Aryan Brotherhood's criminal enterprise and intended to participate in it because he was intimately familiar with the enterprise's members, its codes of conduct, and the breadth of its operations in prison and outside of it.

More specifically, Mazza admits that (1) he became a member of the Aryan Brotherhood in approximately 2009 while incarcerated at Pelican Bay State Prison and knew that Ronald Yandell, Billy Sylvester, Danny Troxell, Pat Brady, Jason Corbett, and others were Aryan Brotherhood members based upon his discussions with them during years incarcerated with the California Department of Corrections and Rehabilitations, or during pretrial detention within the 400 Pod of Eight West at the Sacramento County Jail, including crimes that he was asked to commit and that he agreed to commit, such as arranging the murder of AB member Michael Trippe; (2) he communicated with Ronald Yandell about the conspiracy to murder Trippe over a contraband cell phone possessed by Yandell while Yandell was incarcerated at CSP–Sacramento in 2016 in the Eastern District of California; (3) he knew he was participating in the affairs of the Aryan Brotherhood because he was a member of the enterprise and based upon his conversations with Aryan Brotherhood member Ronald Yandell, Aryan Brotherhood associate Matt Hall (in which he asked his to facilitate criminal activities on behalf of the Aryan Brotherhood), and others occurred through communications with Yandell over a contraband prison phone and with Hall in person in Southern California when it was ordered that Mazza kill Trippe on behalf of the Aryan Brotherhood; and (4) he knew he was associating with the Aryan Brotherhood based upon extensive additional information he learned from being a long-time member of the criminal enterprise and from conversations he had with Yandell, Sylvester, Troxell, Brady, Corbett, Travis Burhop, Hall, and others.

PLEA AGREEMENT                                      A-1

# EXHIBIT "A"
## Factual Basis – Continued

### Summary of Count Five – Conspiracy to Murder AB Member Michael Trippe

Mazza admits that, as part of the criminal agreement charged in Count Five of the Indictment, between August 19, 2016, and October 1, 2016, during and in furtherance of the RICO Conspiracy in Count One, he agreed with co-conspirators Ronald Yandell, Matt Hall, and others to commit the murder of Aryan Brotherhood member Michael Trippe.

### Summary of Facts Supporting Counts One and Five

During the overall RICO conspiracy in Count One and Violent Crimes in Aid of Racketeering ("VICAR") conspiracy in Count Five, Yandell was incarcerated in the California prison system. Beginning at some time in 2016, Mazza was told by AB associate Matt Hall that the Aryan Brotherhood had targeted enterprise member Michael Trippe for murder. Over time, Mazza became aware that, as an Aryan Brotherhood member, the enterprise had assigned responsibility for killing Trippe to Mazza. Although Mazza was friends with Trippe and did not want to carry out the murder, Mazza understood that, if he did not carry out the order, he would eventually be targeted by the enterprise for murder because he had not carried out his responsibility as a member of the enterprise. Thus, in order to maintain his position in the enterprise and avoid the repucussions for not killing Trippe, Mazza agreed to arrange the murder of Trippe.

In connection with the plot to kill Trippe, in 2016, investigators gathered substantial corroborating evidence about the conspiracy during wiretapped calls made over a contraband cell phone possessed by Yandell while he was incarcerated at CSP–Sacramento. In particular, agents intercepted multiple calls in which Yandell and other Aryan Brotherhood members discussed an ongoing enterprise need for Trippe to be murdered.

According to the intercepted calls, and information passed to Mazza, the order to kill Trippe stemmed, in part, from a belief that he had acted as an informant for law enforcement and, in part, from a belief that Trippe had enriched himself by using the enterprise's reputation to personally profit but then had failed to carry out any expected financial support of incarcerated AB members while Trippe was out of prison, beginning in approximately 2012.

At the time of the intercepts, Trippe lived in the San Diego area. According to Yandell's intercepted calls, the enterprise's effort to kill Trippe was initially assigned to Aryan Brotherhood member Elliott "Rascal" Grizzle. However, according to intercepted calls made by Yandell and detailed below, after making several unsuccessful attempts to kill Trippe, Grizzle was arrested for an unrelated murder in San Diego County. With Grizzle no longer available to kill Trippe, Yandell and the enterprise assigned the murder of Trippe to Mazza. At the time in 2016, Mazza lived (out-of-custody) in Southern California. AB associate Matt Hall was also living in Southern California and helped facilitate the enterprise's order to kill Trippe by convening meetings with Mazza in order to reiterate to Mazza that Yandell and the Aryan Brotherhood expected Mazza to carry out the enterprise's directive to kill Trippe.

PLEA AGREEMENT    A-2

# EXHIBIT "A"
## Factual Basis – Continued

### Specific Intercepted Calls among Aryan Brotherhood Members about Killing Trippe

Law enforcement intercepted several calls in which Yandell discussed the history and status of the Aryan Brotherhood's efforts to kill Trippe.

For example, AB member Yandell spoke with AB member Brant Daniel during one of these calls, which occurred on August 19, 2016. During the intercepted call, Yandell and Daniel discussed how "Rascal" (AB member Elliot Grizzle) had just been arraigned in San Diego for assault with a firearm, murder, attempted murder, and robbery. Yandell said that, if Grizzle would have "smoked Trippe, he would have cleaned all this shit up." Daniel said that he had kept telling Grizzle he had to do it and could fix everything. However, Grizzle hadn't done so. Yandell said Grizzle "had the world at his fingertips." Daniel remarked that Grizzle had a "taste of freedom, and he went crazy."

On August 28, Yandell and AB member Pat Brady discussed efforts to kill Trippe. During an intercepted call made at about 8:56 p.m., Yandell and Brady discussed various AB members and associates. Brady mentioned that he had heard that Trippe was an FBI informant. Yandell said that Grizzle had tried to kill Trippe several times because of Trippe's status as an informant. Yandell explained that Grizzle had agreed to kill Trippe because Grizzle had to make amends for becoming a heroin addict when he got out of prison (in contravention of the enterprise's expected code of conduct). Yandell said he told Grizzle it was acceptable to kill Trippe's wife if she was with him but it was not acceptable to kill Trippe's kids. Yandell further explained that Grizzle got arrested on a separate murder soon thereafter and never had the opportunity to kill Trippe. Yandell and Brady also discussed Donald Mazza and their belief that he should not have been made an AB member. They said he had become a member only because he had brought the Public Enemy Number One ("PENI") gang into the enterprise's criminal activities.

During an intercepted call between Yandell and Mazza on August 31, the two discussed the need for "brothers" (members of the enterprise) on the outside of prison to help incarcerated AB members. Mazza explained that he did not want to be responsible for supporting 30 or more incarcerated members because such an arrangement made no sense. However, during the call, Mazza expressed his belief that Matt Hall was a good candidate to become a new member of the Aryan Brotherhood. Finally, during the call, through coded language Mazza acknowledged that, if Yandell made a decision on the "situation in San Diego" (referring to the need to kill Michael Trippe), then all Yandell had to do was tell Mazza and the murder of Trippe would be handled. Yandell thanked him for his commitment to carrying out the hit.

On September 23, Yandell discussed Trippe with Matt Hall. During an intercepted call, Hall told Yandell that he had met with other "brothers" at Mazza's house. According to the intercepted call, during the meeting, the group discussed arranging Trippe's murder. Hall told Yandell that the group had expressed some hesitancy about killing Trippe because Trippe was an AB member, not merely an associate. Hall said the gathered AB members asked whether Trippe's kill order had been confirmed. Yandell confirmed to Hall that, yes, the kill order was valid. According to Hall, Mazza had agreed to do the Trippe killing, and "Rick" (another AB member) had agreed to do another, unspecified killing. Hall described telling all the brothers that they had to be active because "there's no retirement program here . . . no 401K." They had to do "licks" and "be active" and "get down." A "lick," is slang for a robbery

**EXHIBIT "A"**
**Factual Basis – Continued**

and Hall previously used the term to describe a July 2016 robbery/homicide in Anaheim. Hall confirmed to Yandell that they (Mazza and others) were ready to participate.

On October 1, Yandell and Hall again discussed Mazza's assignment to kill Trippe. This call occurred shortly after Los Angeles County officers had searched Hall's residence and found him with Mazza at Hall's house. During one portion of the call, Hall said that Mazza had been tasked with killing someone. Hall said that he felt bad about getting Mazza in trouble when Mazza was out on bail. But, Hall said, "he needs to go kill that dude, right?" (referring to killing Trippe). Later, Hall said again that Mazza was out on bail but needed "to go handle that shit."

Yandell and Brant Daniel discussed the plot to kill Trippe during a call intercepted on October 9. During this call, Yandell said he had spoken on the phone with "Rascal" (Grizzle) when Rascal was hunting "Trippe." Yandell expressed concern about compromising comments he had made during these previous conversations. For example, Yandell had told Grizzle not to murder Trippe in front of Trippe's kids. However, Yandell told Grizzle that, if it was just Trippe and Trippe's wife or girlfriend, then she could go with him too, meaning Grizzle could kill her as well. In his conversation with Daniel, Yandell speculated that "they" (law enforcement) probably heard that call because Grizzle's "old lady" was probably now cooperating with law enforcement (and would presumably tell them about Yandell's directive).

During the October 9 call, Yandell also told Daniel that "Slider" had called him about Trippe. Slider asked if they should kill Trippe because they had "paperwork" on Trippe (meaning, written reports or transcripts demonstrating his cooperation with law enforcement). Yandell predicted that he would be indicted in six to eight months. Yandell said they probably also had him talking to Slider about killing Trippe. Yandell told Daniel that he had been a target ever since he joined the commission (the Aryan Brotherhood's three-man leadership group). Daniel agreed. Yandell said he was about to start "killing these motherfuckers" himself. Daniel said he felt like doing that, too, because he had idiots around him at Salinas Valley prison.

During an October 10 intercepted call, Yandell told Samuel Keeton that Mazza could soon be targeted for murder for failing to meet the AB's expected codes of conduct. In particular, Yandell told Keeton that Mazza was refusing to accept calls from "brothers" and had been out of prison for six years and hadn't "done shit" for the AB. Yandell further explained that Mazza was a "motherfuckin Aryan Brotherhood member" member and if he "doesn't straighten his ass up, he is gonna get his ass smoked." Yandell later made it clear that Mazza would get his "bitch ass killed" if he didn't start taking care of AB directives, including the murder of Trippe. Yandell directed Keeton to tell Mazza that Mazza needed to get in touch with Matt Hall "asap." Yandell made clear that Mazza needed to "step up" and take care of fellow AB members.

As a result of these and other calls, law enforcement agents identified Trippe as an Aryan Brotherhood member living in southern California. Officers found him and told him that his life was in danger.

**EXHIBIT "A"**
**Factual Basis – Continued**

As part of this Plea Agreement, the defendant admits that, as part of the RICO conspiracy charged in Count One and the VICAR conspiracy charged in Count Five, he knowingly and intentionally agreed with Yandell and Hall to murder Trippe on behalf of the Aryan Brotherhood because he was given a directive that, as a member of the enterprise, he was expected to carry out. He further admits that if he did not carry out Trippe's murder, he would be targeted for murder by the enterprise for failing to carry out the murder.

I have reviewed the Factual Basis in Exhibit A and, as far as my own conduct is concerned, I adopt it as a true and correct statement of my crimes.

Dated: JUNE 8, 2022

DONALD MAZZA
Defendant